2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 1

IN RE:  GRAND JURY     )     GRAND JURY NO.
        INVESTIGATION  )     25 GJ 994


BEFORE THE FEDERAL GRAND JURY

(Special June 2024 Grand Jury)


October 9, 2025

2:28 o'clock p.m.


PRESENT:    THE HONORABLE ANDREW S. BOUTROS
            Interim United States Attorney, by
            MS. SHERI MECKLENBURG
            MR. MATTHEW SKIBA
            Assistant United States Attorney
            Chicago, Illinois 60604


            (The Grand Jury having convened
            at 2:28 o'clock p.m. on the 9th
            day of October 2025, pursuant to
            adjournment, met in closed session
            and the following proceedings were
            had herein.)


Veritext Legal Solutions

2025 10 09 25 GJ 994 Evan Hylton – Expeditied

Page 2

I N D E X

PAGES

Direct Examination by Ms. Mecklenburg.... 3 - 76

E X H I B I T S

PAGES

Grand Jury Exhibit 1                           14

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 3

EVAN HYLTON

having entered the Grand Jury room, was sworn by the Foreperson as follows:

MS. MECKLENBURG: I'm happy to be back. Sheri Mecklenburg. We're here -- I'll introduce my co-counsel in a minute. We're here on 25 GJ 994.

With me today is Matthew Skiba. Matt is my partner on this case, and he hasn't been in the office very long. He has been a great partner. I'm very lucky to have him. So this is an interesting case.

THE COURT REPORTER: Can you go to the mic?

MS. MECKLENBURG: Yes. This is a very interesting case. It's a little different. I purposely asked if I could wait for the Thursday grand jury. I did.

Matt will vouch for me. I said I want to go in front of the Thursday grand jury because I know you and I trust you and you know me and you trust me, and I would never ask you to charge somebody if I didn't think there was probable cause and you know you've asked me before "Well, what about this person?" And I said "I

Veritext Legal Solutions

Page 4

don't charge people unless I'm absolutely sure."

So this case I want you to do what we have done and that is put aside any personal feelings. It arises out of the protests at the ICE facility. I want you to put aside your personal feelings. Your politics have nothing to do with that.

I ask that you follow the facts and the law and if there is probable cause to charge, then that's what I ask you to do. And it's not about any particular policy or anything else. It's just whether people can do certain things that break the law or not. So let me make sure I covered all of those warnings with you.

I don't think I need to go into all of them because you guys have been doing this a long time, but I want to just remind you that this is not -- this is a probable cause standard. It's not the guilt-finding phase that the -- you're not asked to consider the wisdom of Congress for making something a crime.

The punishment does not matter to you because, that, we try to work out as we go along very often as you know. You're just being asked to decide the facts from the evidence

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 5

presented and the only other thing I want to remind you that you have -- you have sworn to uphold your duties fairly and impartially. You should not let sympathy, prejudice, fear or public opinion influence you.

Finally, if you have questions during your deliberations, I ask that you come out and let me know so that we can address your questions rather than you just decide on your own that there's a problem.

So I'm going to give you a few seconds of what this case is and then we're going to call in a witness and we're going to show you some videos and photos.

This case arises at the Broadview ICE facility. Have you had anything arising out of the Broadview ICE facility?

GRAND JURY: No.

MS. MECKLENBURG: We're the first. It is being used as a detention facility by ICE right now and what you're going to see -- and, remember, my summary is not evidence. It's not testimony. It's not evidence. I'm just giving you a summary. The testimony and the documents and the exhibits will be the evidence.

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 6

An agent pulled into -- pulled his car into the street that leads up to Broadview where he was going. He was not from Illinois. He was from another state. He was told that's where he is to report.

He is a supervisor of the facilities and he is there. He is the person who makes sure that all the supplies are there and there's staffing and everything.

As he pulls in past the gate and as he gets there, there are a crowd of protesters and they see him and they surround his car and you'll see the video. There is video of it. They all posted the video.

They surround his car and they are banging on the hood and they are banging on the windows and they are pushing up against -- they're standing in front of the car. They're pushing up against the front of the car so that he -- trying to prevent him from moving, I guess, and they're chanting, they're scratching into the car.

His driver -- you'll see evidence that his driver's side mirror was broken off. You'll see evidence that his back windshield was broken off. You'll see evidence that his car was

Veritext Legal Solutions

Page 7

scratched and dented, and you will see evidence that somebody scratched the word "Pig" into the car.

And I will just tell you this. This is definitely not testimony, but you will see it for yourself. It's common sense. Just by that agent keeping his cool and inching, inching forward, nobody got hurt.

The first time I watched it I thought, oh, my God. What happens here? Nobody got hurt. If he had lost his cool in any way and done something, it would have been a tragedy. So fortunately we are not here for that.

But I'm going to present to you an agent who is going to walk us through the videos and then we're going to show you how we identified -- we have an interview of Agent A we're going to tell you about who is the driver and then we're going to talk about how we identified people in the video and it's kind of an interesting thing because what you do is you find a social media account -- you'll hear this evidence.

And then you see that they posted a video of the incident and then you see that somebody -- they liked someone else's post of the

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 8

video so you go to their post of the video and you see that they tagged someone else and you go to theirs and if you pull all of their faces, you recognize them in the video.

And, of course, some people were posting "I was there, and I was one of the people." So that was helpful. And then in the end, I will tell you about the law, and we'll ask you for an indictment. We're asking you for an indictment on a conspiracy that they all together did this and on a 110 -- it's -- the second count is a misdemeanor assault on an officer.

First is the felony. The second we have a misdemeanor. So I'm going to make sure my computer is up, you know I don't usually bring my computer, and get it going. You want to get -- do you want to get him?

MADAM FOREPERSON: Are we having the indictments today?

MS. MECKLENBURG: Yes, I have an indictment today. I have an indictment with a conspiracy count and then a one -- each person -- there's six defendants. Each person will have a separate 110 misdemeanor count.

Okay. Let's see what I got. You

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 9

know this makes me very concerned. This is what I was worried about. Nothing is coming -- my documents won't come up. I might have to do it from the agent or -- I can't get anything. Unbelievable. Let's see if this will work. I have it on a disk, which doesn't play as well, but we'll all have to get through it, and I will get right to you, agent. Okay.

THE COURT REPORTER: I will just activate your computer. Set it up real quick. There is a USB behind the monitor.

MS. MECKLENBURG: I think this is going to work. We'll find out. Okay.

MADAM FOREPERSON: Can you please raise your right hand?

State and spell your name for the record.

THE WITNESS: Evan Hylton, E-v-a-n H-y-l-t-o-n.

MADAM FOREPERSON: Do you solemnly swear or affirm that the testimony you're about to give before this grand jury to tell the truth, the whole truth and nothing but the truth, so help you God?

THE WITNESS: I do.

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

MADAM FOREPERSON:   Thanks.

(Whereupon, the witness

was sworn.)

D I R E C T     E X A M I N A T I O N



2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 53



At this time, I would like to present the law to you. Does anybody have any questions for our agent before he -- before I allow -- ask him to step out while we talk about the law? Yes.

GRAND JURY: When that agent was in

the vehicle by himself in the middle of the mob, was he asked -- did he indicate why he didn't call for backup or for any help?

THE WITNESS: Yes. In the interview, he indicated that he was more concerned that there were so many people in front of his car, that he didn't really have the wherewithal or the ability to call for help because he was afraid that someone was going to get stuck under the car. So he was more concerned with making sure he was going slow and not running anybody over.

GRAND JURY: Thank you.

MS. MECKLENBURG: Yes?

MADAM FOREPERSON: Obviously there's more than six people here at the scene.

Are those six people in this because you're able to identify them and the others --

MS. MECKLENBURG: I will answer that for you. I will tell you the investigation continues.

MADAM FOREPERSON: Okay.

MS. MECKLENBURG: I might be back.

MADAM FOREPERSON: Okay.

MS. MECKLENBURG: I might not. But for right now, these are six people who we are

comfortable have been identified. Identifications continue. I'm not bringing you anyone who we think we might have identified, but not sure.

MADAM FOREPERSON: Okay.

GRAND JURY: How about the stop --

THE COURT REPORTER: I can't hear this.

GRAND JURY: Following up on the other question.

MS. MECKLENBURG: Following up on the other question, he said.

GRAND JURY: Couldn't he have stopped?

MS. MECKLENBURG: Couldn't he have stopped?

GRAND JURY: If he is afraid of running over people, isn't the right thing to do to stop?

MS. MECKLENBURG: Well, didn't you hear the testimony that he said he was afraid to stop because he was afraid they were going to break the windows and pull him out and he would be injured?

So he said -- the testimony was that he said he was concerned about stopping for his

own safety and he was concerned about the safety in the front. So he had to balance it. And this is not testimony now, but I would argue he did a pretty good job of balancing it because nobody got hurt.

GRAND JURY: I know.

MS. MECKLENBURG: So you want to talk about the right thing. What if he had stopped?

GRAND JURY: But it's the flip of the thing is can't you say he was trying to run over the people?

MS. MECKLENBURG: Did you really think when you saw that video --

GRAND JURY: No. It's a bad question --

MS. MECKLENBURG: I understand what --

THE COURT REPORTER: What? Wait.

MS. MECKLENBURG: Do you have questions for the agent because I'll stay and go through the law. I'm going to argue anything you want.

GRAND JURY: Okay.

GRAND JURY: Could you -- one of the

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 57

videos it looked like there was another vehicle behind the agent's --

          Could you show the video?

          MS. MECKLENBURG: Another vehicle behind what?

          GRAND JURY: It looked like there was another vehicle behind the truck.

          THE WITNESS: I can answer that.

          MS. MECKLENBURG: Okay.

          THE WITNESS: That is a public street and there's private businesses there to include, I believe, a trucking company. I think that was an 18-wheeler with a tractor and trailer behind that vehicle.

          GRAND JURY: Could you show one second? I just want to see that for my own --

          MS. MECKLENBURG: Is that at the end of the passenger side?

          GRAND JURY: That would be yes.

          THE WITNESS: Yes, it's at the end.

          MS. MECKLENBURG: There's going to be another one.

          GRAND JURY: Can we see it again?

          MS. MECKLENBURG: Of course. Do you want another one?

Page 58

GRAND JURY: Maybe it was the other video.

THE WITNESS: It's this video. It's just further along.

GRAND JURY: Okay. Did you -- did anybody try to identify the truck and talk to the truck driver of the vehicle who was behind him?

MS. MECKLENBURG: I will just tell you this. That's not evidence that we're presenting today.

GRAND JURY: Okay.

MS. MECKLENBURG: The evidence that we're presenting today we believe establishes probable cause. There may be -- as the investigation continues, we may interview additional witnesses, but once we have the video and we have identified the people in the video, that is -- that is what we believe is our probable cause.

So we're not -- we're asking you to indict on probable cause based on the evidence that we have. It doesn't mean that we won't go talk to people, but this is very fast happening and this happened, like, less than two weeks ago. I have one there.

Page 59

GRAND JURY: The scratches on the vehicle, do you have anything showing the vehicle prior to this incident to prove that those scratches happened during this incident? And it also sat there for five days after the incident. So what -- I guess I'm asking what proof do you have those scratches happened during that incident?

THE WITNESS: So as far as the facility, that's a secure, gated facility under 24/7 surveillance. So I can speak to it sitting there until I took photos of it. The testimony of the agent is what I'm going on based on he should know the condition of the vehicle.

I'm not going to speak for him, but I know for government vehicles you are supposed to essentially let your automotive unit know if there is any damage to your vehicle and that is something that is very closely tracked. So right now it's the testimony of the agent.

GRAND JURY: Were those records checked, the condition of the auto before?

THE WITNESS: So she mentioned, it's still ongoing. So these are all things that will, again, be pulled.

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 60

MS. MECKLENBURG: Let me just point out to you. This is argument. This is not his testimony. This is my argument.

I don't think in your common sense and experience you would believe that the agent was driving around with the word pig etched into his car and his mirror broken and his rear windshield broken before this incident.

That would be hard -- that would be a stretch of your common sense to believe that and you can use your common sense, which is why I came to the Thursday grand jury. Go ahead.

MADAM FOREPERSON: Was the vehicle fingerprinted?

THE WITNESS: Yes, it was.

MS. MECKLENBURG: And those fingerprints are also pending. We will be able to get those, but based on this, any other questions for the agent before I let him go?

MADAM FOREPERSON: I'm sorry.

MS. MECKLENBURG: No.

MADAM FOREPERSON: I don't know if this is a legal question or a question for the agent. I'm pretty sure it's legal.

Is it against the law to touch --

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 61

MS. MECKLENBURG: Stop right there.

MADAM FOREPERSON: Okay.

MS. MECKLENBURG: When you say "is it against the law," that goes to me, not the agent.

MADAM FOREPERSON: Sorry.

MS. MECKLENBURG: Okay. If you don't have any more questions, I'm going to then excuse the agent and then I'm going to go into the law and the indictment.

Thank you, agent. If you can wait outside just in case.

(Whereupon, the agent left the room.)

MS. MECKLENBURG: I want to go to the Elmo now. So this screen so we can do -- I'm going back to the old-fashioned way.

So let me start with the first statute that I'm asking you for charges under. It's conspiracy to impede or injure an officer.

If two or more persons in any state, territory, possession conspire to prevent by force, intimidation or threat any person -- whoa, what is going on with this? What do I have to hit to make it not --

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 62

MADAM FOREPERSON: Oh, yeah. It's an auto focus thing. It goes in and out.

MS. MECKLENBURG: Yeah, I forgot about that. Doesn't it drive you nuts?

Any person from accepting or holding any office, trust or place of confidence under the United States or from discharging any duties thereof or in -- the next clause doesn't apply -- where his duties as an officer are required to be performed or to injure him -- or to injure him in his person or property on account of his lawful discharge of his duties of his office or while engaged in the lawful discharge thereof or to injure his property so as to molest, interrupt, hinder or impede him in the discharge of his official duties, each such person shall be fined under this title or imprisoned or both.

Now, you'll see in the indictment the words "hinder" and "impede." Those are the words that I used for the charges. And you heard testimony that he was on his way. He was at the facility to report for his official duties. Question.

GRAND JURY: I understand the hindering and impeding --

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 63

MS. MECKLENBURG: Yes.

GRAND JURY: -- but the conspiring?

MS. MECKLENBURG: Conspiring -- you can move from circumstances -- I should have addressed this right out.

A conspiracy is just an agreement. It doesn't have to be where we sit down and discuss let's do this together. It's that these people all did this together which shows they all agreed to get in front and on the sides and hinder and impede this officer.

Did you see the part in the video where they all saw he was making some progress and they all started yelling "Get up front. Get up front," and then they all start running to the front. That's in the video that I showed you.

So they all run to the front of the car together to hinder and impede the car. That is a conspiracy under the law, and I should tell you under the law for a conspiracy, this is -- remember when your parents told you when you were young "Be careful who you hang with"? A conspiracy means that you are -- anyone in the conspiracy is responsible for anything anyone else does.

So, for instance, if Matt and I go into a bank to rob it and I think nobody is going to get hurt and he shoots someone, I also am accountable. We had an agreement to go do this. Whatever happens is also my fault. Whatever happened out there, you don't -- we don't have to find the person who scratched "Pig" into the car.

We just have to show that they were all doing this and they were all making this happen and what we showed you for each of the people named in the indictment every single one of those people who we showed you had their hands on the car, bracing against the car, doing -- pushing their bodies against the car trying to impede or hinder the car, trying to break the mirror, trying to -- and banging on the car. We showed you that they were all doing something in that group.

GRAND JURY: Does the term "conspiracy" in any way imply that there is prior thought to this action?

MS. MECKLENBURG: No, not necessarily. You and I could decide together right now to go -- do something right on the spot and that's a conspiracy. It's not -- it's not an element of conspiracy to prove prior planning,

prior thought. And you can see it in the conspiracy statute that that's not an element of it.

Question down there.

GRAND JURY: Yes. Can your actions be a conspiracy as well because you know what the other person is doing?

MS. MECKLENBURG: Thank you. You can agree by action. Yes?

GRAND JURY: Okay.

MS. MECKLENBURG: So you had a question.

MADAM FOREPERSON: I'm just -- like how far does this go? If I'm there and I find it interesting and I take my cell phone out, and I'm just recording it, am I part of it now?

MS. MECKLENBURG: That's a great question, and I will tell you that for at least now, we have identified people who were there and walking alongside and recording or watching or doing other things there and we did not charge them. We only -- we identified them. We know who they are.

But we only charged people who are actually with their hands on the car attempting to

Page 66

hinder and impede the car. I could -- I don't want to go back through the video again. You'd kill me if I did. You'll see people walking along and their -- some are filming it. Some are just walking along with it. None of these people are charged.

MADAM FOREPERSON: Is it against the law to touch a law enforcement vehicle whether it's --

MS. MECKLENBURG: If you're walking -- okay. If you're walking in a parking lot and there's a law enforcement vehicle and you go (indicating), that's not against the law, but if you're touching it in a way that is to hinder and impede it, like standing in front of the car and holding the car and bracing yourself and pushing against the car and you are right in front of it, that is hindering and impeding the car.

If you are banging on the car, if you are grabbing the mirror so the driver can't really go, if you're doing all that, that is not just like touching the car. That's hindering and impeding under the law.

GRAND JURY: Okay.

MS. MECKLENBURG: So for 372 -- any

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 67

other questions before I get you to Section 111, which is the misdemeanor? So this is that whoever forcefully assaults, resists, opposes, impedes, intimidates or interferes with any person designated in Section 114 of this title -- and let me tell you what 114 is. I added that.

It's an officer, employee of the United States who is engaged in the performance of the official duties. So that would be our Agent A. And then I'm going to take you down from that, from this, to show where the acts constitute only simple assault and that's all I'm asking for here, just simple misdemeanor.

It's not the felony. It goes on to talk about a felony, but I don't ask for a felony here. So this is just the assault -- whoever assaults, resists, opposes, impedes, intimidates or interferes with any officer while he is engaged with his duties has violated Section 111. Yes?

GRAND JURY: He was on his way?

MS. MECKLENBURG: He was reporting for his duties. He was about --

GRAND JURY: He didn't actually show up, right?

MS. MECKLENBURG: He is two minutes

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 68

from getting there, but they impeded him from getting there.

GRAND JURY: He wasn't actually there yet, correct?

MS. MECKLENBURG: I don't know why that would matter. I'm asking you. You tell me.

GRAND JURY: Because the way I'm reading this is you're interfering with him getting to his duty, not actually doing his duty. Not getting to his job.

MS. MECKLENBURG: He can't do his duty if you are impeding him from getting there and doing it. Did they, along the way, impede and hinder him in getting there in doing his duty, getting there to perform his duties?

MR. SKIBA: So he was on-site. He was just about -- he had flashed his badge. He was on the way to the facility that he manages, and that's when he was stopped.

MS. MECKLENBURG: He's on the grounds of the facility that he manages.

GRAND JURY: He is the manager?

MS. MECKLENBURG: He is one of the people that manages the facility. He is the ████████████████████. So he is there to go and

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 69

make sure they have staffing, bedding, to answer public inquiries about things. He is one of the manager people. He's not in uniform or anything like that.

GRAND JURY: Okay.

MS. MECKLENBURG: He's not -- yeah, he's not in uniform. He's not out there to arrest people. He is there to just manage the facility and that was the testimony that he was not in uniform and that he was there just for the facility.

GRAND JURY: Thank you for that clarification.

MS. MECKLENBURG: Yeah, I'm sorry. I didn't realize --

GRAND JURY: I have another question about the video.

At the start of it, he said he had to go through a checkpoint with local police?

MS. MECKLENBURG: Yes.

GRAND JURY: Okay. And at some point, are we going to hear about their perspective on this?

MS. MECKLENBURG: There are a lot of different factors that come into this as to

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 70

whether local police -- whether their jurisdictions allow them to get involved in ICE matters.

GRAND JURY:  Okay.

MS. MECKLENBURG:  And I do not want to touch politics with a ten-foot pole.

GRAND JURY:  I don't blame you.

MS. MECKLENBURG:  I can tell you that Matt and I are both making sure in approaching this case that we're putting blinders on to politics.  So I'm not --

GRAND JURY:  I just want to --

MS. MECKLENBURG:  I'm not telling you if we go to trial that there won't be additional witnesses, but keep in mind you're not here -- we're not here to put on the whole trial, just the probable cause.

GRAND JURY:  Oh, I know.

MS. MECKLENBURG:  And at this point we might see if those officers are able -- I'll get to you in one second.  Sorry.  Able to testify, but right now calling them, I don't want -- we don't want to start with their jurisdiction and have them say "We are not coming there to help you."

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 71

GRAND JURY: Yes. Two parts. Is the simple assault part of the resisting, opposing, impeding?

MS. MECKLENBURG: Yes. If you do that, then it's simple assault. You have to have additional factors for it to be a felony and Matt and I decided that we are not going to ask you to find those additional factors for a felony.

GRAND JURY: But the conspiracy is a felony?

MS. MECKLENBURG: The conspiracy is a felony.

GRAND JURY: This person wasn't harmed, but by extension impeding and assaulting his vehicle, that constitutes simple assault?

MS. MECKLENBURG: Yes. You don't have to touch the person for it. The law does not require that you actually touch him.

And, in fact, let's just say that you're going to pick up your children at school and I come along and I stand in front of your vehicle and I am not moving, I'm not going to let you go through. Maybe I put my hand on your car and I push back. I'm hindering you and impeding you from going to pick up your children. There's

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 72

no question.

So that's the kind of analogy that I would use to show that. You don't have to be personally touched. I don't have to go in the car and get you. I'm not letting you proceed to where you're going.

GRAND JURY: That's considered simple assault?

MS. MECKLENBURG: Yes, that would be simple, which is why we're asking for simple, not felony.

GRAND JURY: That's why I go back to my question and use your analogy.

MS. MECKLENBURG: Okay.

GRAND JURY: So if the person comes and stands in front of my car, do I have the right to drive against him?

MS. MECKLENBURG: We are not going -- we don't need to address that today because it didn't happen.

GRAND JURY: It happened. He moved.

MS. MECKLENBURG: It did not happen that he drove into any of them such that any of them were actually knocked over, hit.

GRAND JURY: It's just luck.

Veritext Legal Solutions

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 73

MS. MECKLENBURG: No, it wasn't luck. Oh, no, it wasn't -- sir, it was not luck. It was his calmness and his judgment to drive as slowly as possible as he could and not hit anybody. It wasn't just luck.

GRAND JURY: Let me go back to my question.

MS. MECKLENBURG: Yes.

GRAND JURY: So can I drive slowly without intent of harm to that person who is standing in front of the vehicle?

MS. MECKLENBURG: It would depend on the circumstances. I don't want to give you people advice if you go do it and say, oh, no, Sheri said. I don't want to be the one to tell you. It would depend on the circumstance.

GRAND JURY: The argument is they are pushing back so they won't get hurt. He was driving toward them.

MS. MECKLENBURG: And my argument to that would be you saw in the video space all around where they could have walked away. They didn't actually have to stay there.

Am I losing people?

THE COURT REPORTER: We're way over.

Veritext Legal Solutions

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 74

MS. MECKLENBURG: I don't want to lose you. So we could debate all of these hypotheticals all afternoon, but my next person is probably screaming about me. So I don't want -- you know, we could debate it.

We believe that we have shown you probable cause for what we are asking for today. I'm going to tell you that the indictment has Count 1 under 372, conspiracy for all of these people, and it says what they were each doing and then Counts 2 through 7 -- through 6 -- I'm sorry -- through 7 is a count for each of these people for the misdemeanor 110 -- 111, and I see that this printed a little bit off, but if you sign it, I will get the right one to the court.

GRAND JURY: I'm sorry. I have one last question.

MS. MECKLENBURG: Yeah.

GRAND JURY: The felony for the conspiracy --

MS. MECKLENBURG: Yes.

GRAND JURY: -- I understand we have to indict, but I didn't think the misdemeanors were indicted -- because we had something similar and he charged felony --

Veritext Legal Solutions

2025 10 09 25 GJ 994 Evan.Hylton - Expeditied

Page 75

MS. MECKLENBURG: Yes, I put it all in one indictment.

Can I bring the misdemeanors without you? I believe I could.

GRAND JURY: I thought you didn't even need to bring a misdemeanor.

MS. MECKLENBURG: I think that's right. I don't need to.

GRAND JURY: Okay. Then I guess I'm -- why are we --

MS. MECKLENBURG: It's all in one indictment. That's why. Do you want me to go back and just bring you the conspiracy in an indictment?

Is that what you guys want?

MADAM FOREPERSON: No.

GRAND JURY: I personally feel the complete opposite way.

MS. MECKLENBURG: Pardon?

GRAND JURY: I said I personally feel the complete opposite way.

MS. MECKLENBURG: Okay. You have a right to feel that way. I told you what I've told you and it's up to you to decide what you want to do as a group. You have to deliberate and decide.

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 76

If you're going to -- if you have questions, I will be out there.  Okay.  Thank you.

2025 10 09 25 GJ 994 Evan Hylton - Expeditied

Page 77

C E R T I F I C A T E

I, STEVEN J. BRICKEY, CSR, RMR, CRR do hereby certify that I reported the proceedings had in the above matter before the Federal Grand Jury in the Grand Jury Room in the United States Court House at Chicago, Illinois, on the 9th day of October, 2025, and that the foregoing is a true and accurate transcript of said proceedings.

*[signature]*

Steven J. Brickey, CSR, RMR, CRR

084-004675

Veritext Legal Solutions